UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| TIMOTHY A. DUNCAN, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Case no. 1:22-cv-00032 PLC |
| | ) |
| GREGORY HANCOCK,[1] | ) |
| | ) |
| Respondent. | ) |

### MEMORANDUM AND ORDER

Timothy A. Duncan ("Petitioner"), a Missouri state prisoner, pursues this habeas corpus proceeding under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254, seeking habeas relief from a state court conviction and sentence after a jury trial. [ECF No. 1] Respondent Gregory Hancock opposes Petitioner's petition. [ECF No. 11] Petitioner did not file a reply supporting his petition. For the following reasons, Petitioner's petition is denied.

**I.  Background**

A St. Francois County, Missouri grand jury indicted Petitioner with one count of first-degree statutory sodomy (Count I) and one count of first-degree child molestation (Count II) of S.C. (Victim), an eight-year-old child. [ECF No. 11-10]

The State presented the following evidence at trial: Victim's mother (Mother) was engaged to David Duncan, Petitioner's nephew, and that Victim and her twin sister referred to Petitioner as "Grandpa Tim." [ECF No. 11-4]  On November 23, 2016, the day before Thanksgiving, Mother

---

[1] The Court substitutes as the Respondent Gregory Hancock, the Warden of the Southeast Correction Center ("SECC") where Petitioner is presently incarcerated, in lieu of the person who was the Warden of SECC when Petitioner filed this habeas proceeding. See Federal Rule of Civil Procedure 25(d); Rule 2(a) of the Rules Governing Section 2254 cases in the United States District Court.

allowed Victim to spend the night at Petitioner's house while Mother and Victim's sister returned home. [*Id.*] Victim also testified that "[r]ight before Thanksgiving" 2016, Petitioner pulled down her pajama pants and licked her "twinkie," referring to her vaginal area. [*Id.*] Victim testified she and Petitioner were on the living room couch at the time and that Petitioner's son and daughter-in-law, identified respectively as Corey Duncan and Angelina Duncan, were present in the house but sleeping in a bedroom. [*Id.*]

On a different day, which occurred in Petitioner's bedroom, Petitioner "pulled out his penis" and asked Victim to touch him. [*Id.*] Victim refused and Petitioner told Victim not to tell anyone. [*Id.*] Victim testified that Movant's daughter, Amanda Duncan, was also in the house at the time, cleaning the living room. [*Id.*]

Mother testified she, Victim, and Victim's sister spent the night at Petitioner's home. [*Id.*] That evening, Petitioner told Mother that "[she] and [her] kids belonged to him until [her] fiancé got out of jail" and tried to touch Mother in a sexual way. [*Id.*] Mother refused Petitioner's advances and Petitioner told her that "if he couldn't have [her] that he would marry [her] daughter." [*Id.*] Mother testified that she left the house early the next morning to visit David Duncan, her fiancé, in jail. [*Id.*]

When Mother picked up Victim from Petitioner's home, Victim was wearing Petitioner's T-shirt and had a ring that Petitioner gave her. [*Id.*] Several days later Mother talked to Victim and her sister about what to do if someone touched them inappropriately. [*Id.*] Victim asked Mother, "You mean the way Grandpa…touched me?" [*Id.*] Mother asked Victim what she meant, and Victim told Mother that Petitioner stuck his hand down her pants and "rub[ed] her[,]" and that he took his penis out and asked her to suck it. [*Id.*]   Mother reported the incident to the police. [*Id.*]

2

The next day, after Mother informed Victim's school about the allegations, Victim met with Deborah Pauls, her school's counselor. [*Id.*] Victim told Ms. Pauls that Petitioner touched and licked her genitals. [*Id.*] Ms. Pauls made a hotline call to Missouri's Children's Division and Emalie Murray, an investigator, responded. [*Id.*]

Ms. Murray met with Victim, who told her that Petitioner touched her "privates" with his hand the night before Thanksgiving and told her not to tell anyone or he would be angry. [*Id.*] Victim also met with a forensic interviewer that the Children's Advocacy Center. [*Id.*] During this interview, Victim told the interviewer that Petitioner had touched her "privates." [*Id.*]

Mike Kurtz, a detective with the Park Hills Police Department, interviewed Petitioner. [*Id.*] Petitioner expressed his belief that Mother was "setting him up." [*Id.*] After his arrest, Petitioner was held in the St. Francois County Jail pending trial. [*Id.*] Timothy Tripp, Petitioner's cell mate, testified that Petitioner told Mr. Tripp that he was charged with sexual offenses against a "little girl," aged eleven or twelve, who was his "nephew's kid[]." [*Id.*] Petitioner told Mr. Tripp that Victim "got left with him" on Thanksgiving and she came "in the back room where he was getting high and…the next thing he knows, she's got…his [dick] in her hand." [*Id.*] Petitioner told Mr. Tripp that "the mother and the daughters got this planned out to happen and they seduce the men into…messing with them, and then they get…$2500 fund or something for victims or something." [*Id.*] Petitioner asked Mr. Tripp about the possibility of Mr. Tripp killing Victim and her family. [*Id.*] Petitioner offered to have his daughter post Mr. Tripp's bond in exchange for Mr. Tripp killing Victim or giving Mr. Tripp two bikes and a motorcycle for killing Victim, Victim's sister, and Mother. [*Id.*] Petitioner made the offer multiple times and Mr. Tripp decided to come forward after Petitioner mentioned having someone else commit the murders. [*Id.*]

3

The defense rested without calling any witnesses. Prior to resting the case, defense counsel advised the trial court that he and Petitioner identified several potential witnesses, including his daughter Amanda Duncan, Amanda's boyfriend Joel Kessler, and his son Corey Duncan. [*Id.*] Counsel stated "there were reasons why the cons outweighed the pros as to Amanda Duncan and [Joel]" and that they "made the strategic decision not to call them" as witnesses. [*Id.*] Counsel anticipated calling Corey Duncan and the court had arranged for an interpreter to be present during his testimony but Corey was not at the courthouse. [*Id.*] Counsel stated that Corey Duncan was going to offer testimony similar to testimony that had "unexpected[ly]" come out during the State's case in chief. [*Id.*]

The jury found Petitioner guilty on both counts. [ECF No. 11-10] The trial court sentenced Petitioner, in accordance with the jury's recommendation, to consecutive twenty- and ten-year terms of imprisonment. [ECF Nos. 11-2, 11-10]

Following sentencing, the trial court questioned Petitioner regarding his counsel's assistance pursuant to Missouri Supreme Court Rule 29.07. [ECF No. 11-4] When asked whether his attorney did everything Petitioner requested, Petitioner stated that counsel did not call five witnesses Petitioner requested, including his daughter, son, brother, son's girlfriend, and "grandbabies' mama." [ECF No. 11-4] Defense counsel responded that Amanda Duncan and Corey Duncan, Petitioner's daughter and son, were not able to be located during the guilt phase and only appeared during the sentencing phase of trial. [*Id.*] If called to testify, Amanda Duncan would have testified that she did not witness the alleged events despite being in the house prior to Thanksgiving, however, counsel was concerned that Amanda's prior allegations of molestation against Petitioner would have been admissible if she testified on Petitioner's behalf. [*Id.*]

4

Corey Duncan, while not present in the house the day before Thanksgiving, would have testified that the home was not "very big," and that he did not witness any of the alleged events while he was there. [*Id.*] Counsel explained that he did not call Amanda's boyfriend, Joel Kessler, because he was in the Department of Corrections and counsel did not want to undermine the defense's attack on Mr. Tripp's credibility based on his incarceration. [*Id.*] Counsel explained that Petitioner's grandchildren's mother was interviewed but she did not possess material information and did not want to testify. [*Id.*] Finally, counsel was not able to locate Petitioner's brother, subsequently identified as Thomas Duncan, and was advised by Amanda Duncan that Petitioner's brother was unreliable and "would be detrimental." [*Id.*] The trial court found the record did not demonstrate probable cause of ineffective assistance of counsel. [*Id.*]

Petitioner filed a direct appeal, and the Missouri Court of Appeals affirmed. [ECF No. 11-7] Petitioner also filed a motion for post-conviction relief pursuant to Missouri Supreme Court Rule 29.15. [ECF No. 11-3, 11-8] The motion court denied Petitioner's claims without an evidentiary hearing, and the Court of Appeals affirmed the motion court's decision. [ECF No. 11-3] Petitioner now seeks habeas relief before this Court.

## II.   Grounds for relief

In the habeas petition, Petitioner asserts the following seven grounds for relief:[2]

   (1) the trial court erred in failing to *sua sponte* order a change of venue or recusing itself (Ground One);
   (2) trial counsel was ineffective for failing to prepare for trial (Ground Two);
   (3) trial counsel was ineffective for failing to call witnesses on Petitioner's behalf (Ground Three);
   (4) Petitioner's due process right to a fair and impartial jury was denied due to media coverage (Ground Four);
   (5) Petitioner's due process right to a fair and impartial jury was denied due to biased jurors (Ground Five);

---

[2] Respondent asserts that "Petitioner states two grounds for relief in his petition for a writ of habeas corpus that Respondent understands to raise six unique claims[.]" [ECF No. 11] Based upon its review of the petition, the Court finds that Petitioner raised a seventh claim which the Court will address.

5

    (6) Petitioner's due process right to testify in his own defense was denied (Ground Six); and

    (7) trial counsel was ineffective for failing to impeach Mother (Ground Seven). [ECF No. 1]

Respondent counters that the petition is untimely. [ECF No. 11] Respondent also contends that the Missouri Court of Appeals considered Petitioner's claim that defense counsel was ineffective for failing to call witnesses on Petitioner's behalf on the merits, and that this ground should be denied because the Court of Appeals' decision on this issue is not contrary to, or an unreasonable application of, clearly established federal law, and is not based on an unreasonable determination of the facts. [*Id.*] Respondent further contends that five of the six remaining grounds are procedurally barred and, alternatively, lack merit. [*Id.*] Respondent does not address Petitioner's seventh ground, that defense counsel was ineffective for failing to impeach Mother. [*Id.*]

### III. Discussion

#### A. Timeliness of the Petition

Respondent requests that the Court dismiss the petition as untimely. [ECF No. 11] Respondent asserts Petitioner filed his action 395 days after the judgment became final, excluding those periods during which the statute of limitations was tolled for Petitioner's post-conviction relief proceedings. [ECF No. 11]

Under the AEDPA, state prisoners have one year to file their petition for federal habeas corpus relief after "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review[.]"[3] 28 U.S.C. § 2244(d)(1)(A); *Boston v.*

---

[3] The one-year statute of limitations begins to run on the latest of four alternative dates, including:
    (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
    (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

*Weber*, 525 F.3d 622, 624 (8th Cir. 2008). If a petitioner does not timely file the federal habeas petition, then the Court must dismiss the petition. *See Cross-Bey v. Gammon*, 322 F.3d 1012 (8th Cir. 2003) (reversing and remanding for dismissal of the habeas petition as not timely filed).

A judgment becomes final under 28 U.S.C. §2244(d)(1)(A) when the time for seeking review in the state's highest court expires. *Gonzalez v. Thaler*, 565 U.S. 135, 150 (2012). When a Missouri prisoner files a direct appeal but does not file a motion to transfer to the Missouri Supreme Court, the statute of limitations begins to run 15 days after the Missouri Court of Appeals affirms the conviction, as this is when the prisoner may no longer seek further review. *See Camacho v. Hobbs*, 774 F.3d 931, 934-35 (8th Cir. 2015) (when a petitioner foregoes state appeals, the court must look to state-court filing deadlines to determine the expiration of the time for seeking direct review); and Mo. S. Ct. R. 83.02 (a party seeking transfer to the Missouri Supreme Court must file an application for such transfer "within fifteen days of the date on which the opinion, memorandum decision, written order, or order of dismissal is filed").

If the petitioner files a post-conviction petition, the statute of limitations is tolled while the post-conviction action is pending.  28 U.S.C. §2244(d)(2) ("The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection"); *see Boston*, 525 F.3d at 624.  The statute of limitations remains tolled throughout the entirety of the post-conviction process. *See Carey v. Saffold*, 536 U.S. 214, 219-20 (2002) (an application for post-

---

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
28 U.S.C. § 2244(d)(1). In this case, the first provision provides the relevant start date.

7

conviction relief "is pending as long as the ordinary state collateral review process is in continuance – i.e., until the completion of that process"). This period encompasses the time between the denial of a post-conviction motion and the timely filing of an appeal. See *Peterson v. Gammon*, 200 F.3d 1202, 1205 (8th Cir. 2000) (the "ordinary meaning of the word 'pending' ... includes the entire period during which a notice of appeal from a denial of post-conviction review would be timely, assuming such a notice was in fact filed"). The post-conviction process ends on the date the Court of Appeals issues its mandate. *See Payne v. Kemna*, 441 F.3d 570, 572 (8th Cir. 2006) (determining that petitioner's petition, filed exactly one year after the issuance of the mandate in his post-conviction case, was timely). However, the period between the date on which a petitioner's case became final on direct review and the date on which he filed for postconviction relief, is not tolled and counts against the one-year statute of limitations. *Painter v. Iowa*, 247 F.3d 1255, 1256 (8th Cir. 2001) ("the time between the date that direct review of a conviction is completed and the date that an application for state post-conviction relief is filed counts against the one-year period"); *Boston*, 525 F.3d at 624-26.

Applying these principles to Petitioner's case demonstrates that the petition is timely. Here, Petitioner filed a direct appeal and the Court of Appeals affirmed the judgment on July 9, 2019. [ECF No. 11-7] Petitioner did not file a motion for rehearing or a motion to transfer so the judgment became final 15 days later, on July 24, 2019. On that date, the Section 2244(d)(1) one-year statute of limitations began to run and continued to run for 68 days until Petitioner filed his post-conviction motion on September 30, 2019.

The statute of limitations was tolled until the post-conviction process ended on June 3, 2021, the date on which the Missouri Court of Appeals issued its mandate affirming the motion court's judgment. [ECF No. 11-3] At this point, the one-year statute of limitations began to run again and

continued to run until Petitioner filed his 28 U.S.C. §2254 petition on March 22, 2022. Between June 3, 2021, and March 22, 2022, an additional 292 days elapsed. Adding together the 68 days between the end of direct review and the filing of his Rule 29.15 postconviction motion in the circuit court, and the 292 days between the issuance of the Court of Appeals' mandate in the post-conviction proceeding and the filing of the instant petition, results in a total of 360 days. The one-year statute of limitations for Petitioner to file his federal petition for writ of habeas corpus had not yet expired by the time Petitioner filed his petition on March 22, 2022. Accordingly, the petition is timely.

### B.  Procedurally-defaulted claims (Grounds One, Two, Four, Five, and Six)

Respondent contends that five of Petitioner's grounds are procedurally defaulted because Petitioner did not properly present these grounds to the state court. [ECF No. 11] Specifically, Respondent asserts that Petitioner's claim that defense counsel was ineffective for failing to prepare for trial as presented in Ground Two is defaulted for failing to include the claim during the post-conviction proceedings. Respondent also asserts that Petitioner's claims of error as presented in Grounds One, Four, Five, and Six are defaulted for failing to raise the alleged errors in the trial court or on appeal. Alternatively, Respondent asserts these claims are without merit.

Before seeking federal habeas relief under § 2254, a petitioner must exhaust his state-court remedies. 28 U.S.C. § 2254 (b)(1)(A). To avoid procedural default, the petitioner must "fairly present" the claim to the state court before seeking federal habeas relief. *Morris v. Norris*, 83 F.3d 268, 270 (8th Cir. 1996); *Deck v. Jennings*, 978 F.3d 578, 581 (8th Cir. 2020). "A claim has been fairly presented when a petitioner has properly raised the 'same factual grounds and legal theories' in the state courts which he is attempting to raise in his federal habeas petition." *Wemark v. Iowa*, 322 F.3d 1018, 1021 (8th Cir. 2003) (quoting *Joubert v. Hopkins*, 75 F.3d 1232, 1240 (8th Cir.

9

1996) (internal citations omitted)). "If a petitioner has not presented his habeas corpus claim to the state court, the claim is generally defaulted." *Barrett v. Acevedo*, 169 F.3d 1155, 1161 (8th Cir. 1999) (en banc).

A petitioner must present the claim to the state courts "in accordance with state procedural rules." *Arnold v. Dormire*, 675 F.3d 1082, 1086-87 (8th Cir. 2012) (internal quotation marks omitted) (quoting *Beaulieu v. Minnesota*, 583 F.3d 570, 573 (8th Cir. 2009)). A state prisoner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *Grass v. Reitz*, 643 F.3d 579, 584 (8th Cir. 2011) (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999)). This Court may not consider the merits of a procedurally defaulted claim unless the petitioner shows either (1) cause and prejudice or (2) that a miscarriage of justice will occur if the Court fails to consider the grounds because the petitioner is actually innocent of the charge of which he was convicted. *Sawyer v. Whitley*, 505 U.S. 333, 338-39 (1992); *Thomas v. Payne*, 960 F.3d 465, 471 (8th Cir. 2020).

Under Missouri law, a post-conviction proceeding is the exclusive procedure for pursuing an ineffective-assistance-of-counsel claim. *Moore-El v. Luebbers*, 446 F.3d 890, 896 (8th Cir. 2006); Mo. S. Ct. Rule 29.15(a). Any claim that should have been but was not presented in a post-conviction motion or in an appeal from a denial of a post-conviction motion is procedurally defaulted. *Interiano v. Dormire*, 471 F.3d 854, 856 (8th Cir. 2006). This Court may not consider the merits of a procedurally defaulted claim unless the petitioner shows either (1) cause and prejudice or (2) that a miscarriage of justice will occur if the Court fails to consider the grounds because the petitioner is actually innocent of the charge of which he was convicted. *Sawyer v. Whitley*, 505 U.S. 333, 338-39 (1992); *Thomas v. Payne*, 960 F.3d 465, 471 (8th Cir. 2020).

10

In Ground One, Petitioner argues the trial court erred in failing to *sua sponte* grant a change of venue or for failing to recuse herself. In Ground Two, Petitioner asserts his defense counsel was ineffective for failing to prepare for trial. In Grounds Four and Five, Petitioner contends that his right to a fair and impartial jury was violated as a result of: (1) media coverage of his case, and (2) biased individuals serving as jurors. In Ground Six, Petitioner contends the trial court denied him the right to testify in his own defense. [ECF No. 1]

Petitioner did not object to any of the alleged trial court errors or omissions during trial, raise the claims in a motion for new trial, or raise the claims on appeal. Moreover, Petitioner did not assert a claim that defense counsel provided ineffective assistance by being unprepared for trial in either his post-conviction petition or in his appeal from the motion court's denial of post-conviction relief. Petitioner's failure to present his claims in the state court results in their procedural default. *See Barrett*, 169 F.3d at 1161.

Petitioner must demonstrate cause and prejudice to overcome procedural default. *Sawyer*, 505 U.S. at 338-39; *Thomas*, 960 F.3d at 471. Petitioner, however, has not presented any basis to support a finding of cause and prejudice to excuse his procedural default of these claims. As such, Petitioner's Grounds One, Two, Four, Five, and Six are procedurally defaulted.

### C.  Claims addressed on the merits (Grounds Three and Seven)

#### 1. Standard for habeas review

A prisoner in custody under the judgment and sentence of a state court may only seek habeas relief on the ground that his custody violates the United States Constitution, laws, or treaties. 28 U.S.C. §2254(a); *see also* 28 U.S.C. §§ 2241(c)(3), 2241(d). When considering a state prisoner's habeas petition, a federal court is bound by the AEDPA, *see* 28 U.S.C. § 2254(d), to exercise "only a limited and deferential review of underlying state court decision." *Nash v. Russell*, 807 F.3d 892,

11

897 (8th Cir. 2015) (internal quotation marks omitted) (quoting *Worthington v. Roper*, 631 F.3d 487, 495 (8th Cir. 2011)). A federal court may not grant habeas relief to a state prisoner unless a state court's adjudication on the merits of a claim (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254(d).

A state court decision is contrary to clearly established federal law if it "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if [it] decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A state court decision constitutes an unreasonable application of clearly established federal law if it "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The test of reasonableness is an objective one. *Id.* at 409-10. When reviewing a matter under Section 2254(d)(1), a federal habeas court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

Under section 2254(d)(2), a petitioner may obtain relief if the state court's rejection of his claim was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). A federal habeas court must "accord the state trial court substantial deference" and will not supersede the state court's factual determination if "reasonable minds reviewing the record might disagree about the finding in question." *Brumfield v. Cain*, 576 U.S. 305, 314 (2015) (internal quotation marks omitted) (quoting *Wood v. Allen,* 558

12

U.S. 290, 301 (2010)). A state court's factual determination is not unreasonable "merely because [a] federal habeas court would have reached a different conclusion in the first instance." *Wood,* 558 U.S. at 301.

A state court's factual determination is presumed correct unless the petitioner rebuts the presumption by clear and convincing evidence. 28 U.S.C. §2254(e)(1). The presumption of correctness applies to the state court's factual determinations at either the trial or appellate levels, *Smulls v. Roper*, 535 F.3d 853, 864 (8th Cir. 2008) (en banc), and to a state court's implicit findings of fact, *Grass v. Reitz*, 749 F.3d 738, 743 (8th Cir. 2014). Federal habeas courts defer to a state court's credibility determinations and grant habeas relief only if those determinations were objectively unreasonable based on the record. *Smulls,* 535 F.3d at 864.

### 2. Grounds Three and Seven: Ineffective Assistance of Counsel

Petitioner asserts in Grounds Three and Seven that he received ineffective assistance of defense counsel. [ECF No. 1] Respondent argues the Missouri Court of Appeals addressed Ground Three on the merits and that this Court should defer to the state court's decision and deny this ground for relief. [ECF No. 11] Respondent does not address Petitioner's Ground Seven.

To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must show that: (1) "counsel's representation fell below an objective standard of reasonableness[;]" and (2) "the deficient performance prejudiced the defense[.]" *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). The first prong requires a showing "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. Defense counsel's conduct is presumed to fall within the wide range of professionally reasonable assistance. *Id.* at 689. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than

13

complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* at 690-91.

To prove prejudice, a petitioner must show a reasonable probability exists "that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. A court need not address both prongs of the *Strickland* test if it finds the petitioner has not established one of the prongs. *Id.* at 697.

"Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Harrington v. Richter*, 562 U.S. 86, 105 (2011). "The standard created by *Strickland* and §2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Id.* (internal citations omitted). It is not sufficient for a petitioner to "show that he would have satisfied *Strickland*'s test if his claims were being analyzed in the first instance[.]" *Bell v. Cone*, 535 U.S. 685, 698-99 (2002). "Rather, he must show that the [state court] applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Id.* at 699.

**a. Ground Three – Failure to Call Witnesses**

In his third ground for relief, Petitioner argues that his trial attorney provided ineffective assistance of counsel because he "[d]id not call my witnesses." [ECF No. 1] Petitioner does not set forth in his petition which witnesses he wanted counsel to call.

However, in his post-conviction petition, Petitioner asserted defense counsel was ineffective for failing to call five witnesses whose testimony would have established that he could not have committed the charged offenses. Specifically, Petitioner contended that Amanda Duncan, Joel Kessler, Corey Duncan, and Angelina Duncan were in the house with Victim and Petitioner on November 23 and 24, 2016, the day before Thanksgiving and Thanksgiving day. Additionally,

14

Thomas Duncan, Petitioner's brother, left with Petitioner around 4:00 p.m. on November 24 to travel to Indiana. [ECD No. 11-8] Petitioner argued that each of these witnesses would have testified that they did not see Petitioner touch Victim inappropriately or ask her to do anything inappropriate. [ECF No. 11-3]  The motion court denied Petitioner relief without an evidentiary hearing, finding the record conclusively refuted Petitioner's claims, defense counsel's performance was not deficient, and Petitioner had failed to establish prejudice in light of the overwhelming evidence of Petitioner's guilt. [ECF No. 11-8]

The Missouri Court of Appeals found that the proposed testimony of Amanda Duncan, Joel Kessler, Corey Duncan, and Angelina Duncan that they were present in the home on the day of the offenses did not raise a viable defense because the proposed testimony demonstrates that there were moments when they were not present with Petitioner and Victim. [ECF No. 11-3] The Court also found the record established, through trial counsel's statements, that the defense theory that the house was crowded at the time of the offenses was already developed through Mother's testimony at trial. [*Id.*]

The Missouri Court of Appeals further found that defense counsel provided strategic reasons for not calling these witnesses. Specifically, defense counsel advised the trial court that: (1)  he did not call Amanda to testify because he was concerned the State would seek to admit prior allegations that Petitioner molested Amanda; (2) he did not call Joel Kessler because he was incarcerated at the time which would undercut counsel's credibility attack on Mr. Tripp; and (3) he did not call Angelina Duncan because she was reluctant to testify and did not have material information different than Corey Duncan, whom counsel intended on calling.  With respect to Corey Duncan, the record reflects that counsel intended to call Corey to testify but Corey could not be located at the courthouse on the morning of trial. Finally, as to Thomas Duncan, Petitioner's brother, defense counsel stated

15

that Thomas Duncan's proposed testimony failed to provide Petitioner with a defense, defense counsel did not have contact information for Thomas, and Amanda Duncan advised that Thomas was unreliable. [ECF No. 11-3]

The Missouri of Appeals found that defense counsel's strategic decisions were reasonable and that Petitioner did not allege that defense counsel was untruthful when providing the trial court his reasoning for not calling these witnesses. [ECF No. 11-3] The Court further found that Petitioner had failed to demonstrate that he was prejudiced by defense counsel's decision not to call these witnesses because the defense strategy that the home was crowded on the days of the abuse was established by Mother's testimony at trial. [ECF No. 11-3]

The Court concludes that the Missouri Court of Appeals properly applied *Strickland* and determined the Petitioner failed to satisfy his burden of demonstrating that defense counsel's performance fell outside the range of reasonable professional assistance or that he was prejudiced by defense counsel's alleged deficient representation. The Missouri Court of Appeals' conclusion that defense counsel was not ineffective was neither contrary to, nor an unreasonable application of, *Strickland*, and was not based upon an unreasonable determination of the facts based on the record. Accordingly, Petitioner's Ground Three is denied.

**b.  Ground Seven – Failure to Impeach Mother**

In his seventh ground for relief, Petitioner contends his trial attorney provided ineffective assistance of counsel by failing to impeach Mother after Mother perjured herself at trial. [ECF No. 1] The petition does not clearly state how Mother purported "lied" at trial, however, Petitioner raised a similar claim during his post-conviction proceeding.[4]

---

[4] At various points in the petition, Petitioner asserts that he "found out after [his] appeal was denied" that Mother "took her daughters to the [emergency room and] accused her boyfriend David Duncan of touching her daughters [and] his charges somehow became my charges." [ECF No. 1] Petitioner also states that "DFS reports" demonstrate that Mother lied "under oath and got arrested for meth [and] got her kids

16

In his motion for post-conviction relief, Petitioner claimed his defense counsel was ineffective for failing to impeach Mother's testimony that she left Victim and her sister at Petitioner's home on the morning of Friday, November 25, 2016, the day after Thanksgiving, so that she could visit her boyfriend David Duncan at the St. Francois County Jail. [ECF No. 11-3, 11-8] Petitioner alleged that St. Francois County Jail Superintendent Hardy White was willing and available to testify that in November 2016 the St. Francois County Jail was only open for visits on Saturdays and Sundays. [ECF No. 11-3, 11-8] Petitioner claimed defense counsel was ineffective for failing to call Superintendent White to impeach Mother's testimony.  The motion court denied Petitioner relief without an evidentiary hearing, finding defense counsel "cross-examined [Mother] extensively" and Petitioner failed to establish prejudiced by the alleged failure because "further impeachment…would not have created any substantial likelihood that the outcome of the trial would have been different." [ECF No. 11-8]

---

taken away[,]" and that "[t]hey change [their story] about 6 different time[s]. She made it all up." [ECF No. 1]

Petitioner attached several police reports related to incidents in November 2017 after Mother took her other daughter, Victim's sister, to the emergency room and reported possible sexual abuse by her boyfriend David Duncan. [ECF No. 1-1]  At that time, Mother admitted using controlled substances and Victim and her sister were removed from Mother's care. [ECF No. 1-1]  Petitioner also attached reports from the Missouri's Department of Social Services regarding the removal of the children from Mother's care. [ECF No. 1-1]

It is unclear if these allegations and documents are intended to support Petitioner's claim that Mother perjured herself during trial.  If they are, however, these documents do not support Petitioner's contention that Mother "lied" during her testimony. At trial, Mother testified that her children were in foster care after they were removed from her care as a result of her drug use. [ECF No. 11-4] Defense counsel cross-examined Mother about the children's removal and raised the issue during closing argument. [ECF No. 11-4]

Petitioner's assertion that Mother and Victim "change[d]" their story and that David Duncan's "charges somehow became my charges" is not supported by these documents. Petitioner was charged and convicted of incidents involving Victim that occurred in November 2016. The documents provided by Petitioner contain allegations of conduct involving Victim's sister a year later in November 2017. The social services report provided by Petitioner explicitly differentiates between Victim's allegations against Petitioner stemming from conduct that occurred in November 2016 and Mother's suspicions about David Duncan a year later involving her other daughter. [ECF No. 1-1]

17

On review, the Missouri Court of Appeals applied the *Strickland* standard to Petitioner's claim of error, concluding that the extent of defense counsel's cross-examination fell within the range of reasonable trial strategy and that Petitioner had failed to demonstrate that additional impeachment would have affected the outcome of the trial. [ECF No. 11-3] Specifically, the court found that defense counsel had "extensively" cross-examined Mother, stating:

> Counsel asked why she would leave her children with [Petitioner], who threatened to marry her daughters, when [Mother's] own home was closer to the jail. Additionally, in Mother's statement to the police, she wrote that she went to the jail on November 26, 2016, which was a Saturday. As [Petitioner] points out, the jail is open to visitors on Saturdays. [Petitioner] does not allege that Mother did not go to visit her fiancé at the jail, only that the jail is not open to visitors on Fridays.
> Trial counsel also questioned Mother about her police report; specifically, why almost the entire statement she wrote out was about what [Petitioner] had done to her and not to Victim. Counsel asked whether Mother coached Victim to make the allegations against [Petitioner]. Defense counsel also brought out the fact that the State took custody of Mother's children due to Mother's drug use. Counsel argued during closing that Mother had "everything to gain from [Petitioner] being found guilty," to "have an excuse for the drug use, . . . an arsenal to get her kids back."

Upon review of the record, the Court concludes that the Missouri Court of Appeals properly applied *Strickland* and its determination that defense counsel did not provide ineffective assistance by failing to further impeach Mother was neither contrary to, nor an unreasonable application of, clearly established federal law. *See Peterson v. Smith*, 510 Fed. Appx. 356, 362 (6th Cir. 2013) (failure of counsel to attempt to impeach witness with "minor inconsistencies, immaterial discrepancies, or details omitted" from prior statement did not fall outside the wide range of reasonable professional assistance). Nor was the Court of Appeals' decision based on an unreasonable determination of the facts in the light of the record. Accordingly, Petitioner's Ground Seven is denied.

## IV.     Certificate of appealability

A final order in a habeas proceeding in which the detention complained of arises out of process issued by a state court cannot be appealed unless the judge issues a certificate of appealability ("COA").  28 U.S.C. § 2253(c); Fed. R. App. P. 22(b)(1).  A judge may issue a COA under Section 2253(c) only if a petitioner has made "a substantial showing of the denial of a constitutional right." *Tennard v. Dretke*, 542 U.S. 274, 282 (2004); *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).  This standard requires a petitioner to demonstrate, with respect to claims resolved on the merits, that "reasonable jurists would find the ... court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *accord Miller-El*, 537 U.S. at 338 (quoting *Slack*, 529 U.S. at 484).

The Court concludes that Petitioner has not made a substantial showing of the denial of any constitutional right. Accordingly, the Court will not issue a certificate of appealability with respect to any aspect of the denial of Petitioner's petition.

V.  Conclusion

After careful consideration,

**IT IS HEREBY ORDERED** that Petitioner's request for relief pursuant to 28 U.S.C. § 2254 [ECF No. 1] is **DENIED**.

**IT IS FINALLY ORDERED** that any motion by Petitioner for a certificate of appealability will be **DENIED.**

A separate judgment in accordance with this Memorandum and Order is entered this same date.

_____
PATRICIA L. COHEN
UNITED STATES MAGISTRATE JUDGE

Dated this 4th day of March, 2025